The next matter on our calendar is Dwight Forsythe v. Jefferson B. Sessions III. Thank you. Good morning. Good morning. Thank you, Your Honor, and may it please the Court. David Zients, as amicus, in support of Petitioner. Has the Petitioner been in touch with any of his lawyers? Your Honor, I have not been able to make contact with Petitioner. Doesn't that limit what we can do if we don't know where he is? Your Honor, I think it doesn't, and in light of your question and the Court's order, I'm very happy to begin with the mootness and abandonment issues that the Court raised. Go ahead. And I would make three basic points. First, as a matter of mootness, I think it is well established that departure from the country does not moot a challenge to a final order of removal, so long as there are collateral consequences here. The relevant collateral consequence in this case is that this is a second removal, which carries a 20-year bar on re-admission. So that alone, the fact of his departure, should not be a reason— It doesn't affect our jurisdiction. That's correct, Your Honor. So we're really focusing on the issue of abandonment. I think that's right, Your Honor, and I think the point that you make, the distinction between jurisdiction and abandonment, this Court does have jurisdiction, and so you need to make a discretionary determination of whether the case should go forward. And on that point, I would make a few points. I would point the Court towards its decision in Haywood v. Ice, that's 372 Federal Appendix 122. That's a case where an immigration petitioner had already been removed. The Court went ahead and decided the case. In fact, in our case, Mr. Forsythe had diligently participated in this appeal, filed briefs, filed motions, basically right until the eve of his departure. In the Haywood case, I think there was actually less participation. Nonetheless, this Court said, We reject the government's arguments that the petition is moot because Haywood is not participating in the appeal and could not be notified of a decision in his favor. So I think the Haywood decision is important precedent in this regard in terms of this Court has previously said it will go ahead and decide an appeal even when the petitioner who has been removed is no longer in contact with the Court or with counsel. Two additional points. The Court raised- In this case, in the order denying a stay of removal, we did make clear that the petitioner, if he wanted to continue to pursue his petition, would have to keep in touch with the Court, didn't we? You're right, that's correct. And I think, again, this goes to the point Your Honor made about the difference between jurisdiction as a mootness matter and a discretionary determination of whether the case should go forward. And I think to the extent you view this in terms of noncompliance with an order of the Court, the question is really, is dismissal a sanction? And I think there are a few reasons why it shouldn't be here. First, I think the testimony in the record is that Mr. Forsyth did not know where he would go in Jamaica, did not have family, did not have a place to stay, and was basically on the run. And so I think the Court shouldn't lightly assume that Mr. Forsyth is willfully flouting an order of this Court. He very well may not be able to comply because he may not have a fixed address. The second point I would make, Your Honor, again, in this discretionary balancing of what, if anything, should be the sanction for not providing an updated address, is that briefing on this case was complete. Mr. Forsyth was removed in January. The government did not inform this Court that that had happened. This Court went ahead with the case, it appointed counsel. Counsel, myself, had trouble finding a petitioner, and only then did it come to light. So I think the fact that the government certainly did not ask this Court to impose this sanction of dismissal for noncompliance with a court order. This panel of this Court did not grant a say pending appeal. That's correct, Your Honor. That's why he was removed. Correct, Your Honor. Okay, go on. And, Your Honor, he has been removed. And in general, there are collateral consequences to an order of removal that does not moot the case. So I think the question simply comes down to should the strong medicine of a dismissal of this appeal as a discretionary matter be imposed because Mr. Forsyth did not provide an updated address? I think in this case, there's clear evidence in the record that there very well may be extenuating circumstances and an explanation for why he has been unable to do that. The government has not sought this as a remedy or as a sanction against Mr. Forsyth. And in this Court's Haywood decision, the Court has not treated the absence of a petitioner or even his nonparticipation or inability to be notified as a reason not to decide the appeal on the merits. You're suggesting we could go ahead and consider the merits of this case without Mr. Forsyth here? Was that what I heard you say, looking at the issue of the social group, even without him in front of us? Yes, Your Honor. I think that is what this Court did in Haywood. It decided the merits of the appeal. Your Honor, Mr. Forsyth has briefed this case. He filed a brief. He filed a reply brief. Isn't there a risk that we're essentially rendering an advisory opinion to someone who's no longer interested in it? That may not be the case, but if he has affirmatively abandoned and has no longer any interest in the appeal, it would be moot, right? Your Honor, I think the key word in your question is risk. When the question is standing to give rise to Article III jurisdiction, it is the party coming to court with the burden. That is not the case with mootness. It is generally the defendant that has the burden to establish mootness. So I think if there is any uncertainty about Mr. Forsyth's interest in this case, I think what you can look at is the fact that he does have a live stake. If he wants to apply for readmission 10, 15 years down the line, and this case is still out there on the books, he is barred. So I think he has a real interest in the case, and absent some affirmative indication that he truly has abandoned it, I do think this is not at all an advisory opinion. Your Honor, if I may say a few words about the merits of the case, unless Your Honors have further questions about jurisdiction or abandonment. I think the BIA made a significant error in this case in terms of this court's decision in Gashi v. Holder. In Gashi, you had very similar facts where this court looked at a number of indicia of understanding in society that that individual wasn't informant and was persecuted on that ground. The court identified threats. It identified multiple attacks. Your Honor, the exact same thing happened here. Mr. Forsyth was attacked on multiple occasions. He was essentially run out of the country with the police saying they would not be able to protect him. And, Your Honor, the BIA did not consider this a particular social group. I think the court needs to look at the evidence in the record about the specific social context in Jamaica. There's articles about, quote, unquote, informer phobia, this idea of informa fi dead, informant is dead, that is in the popular music even. So I think that is an important aspect of this case as well. Your Honor, I would make one further point on the cat issue just very quickly in the time that I have remaining. The court, in terms of whether the standard for relief under the Convention Against Torture was met, made a clear, the BIA made a clear legal error. The evidence was regard to the police being involved in targeting Mr. Forsyth or informing on the gang's criminal activities. That's in the record at page five. So essentially what the BIA did was it said you don't get cat relief unless you can prove police involvement. That is not the standard. The standard is acquiescence, and I think the record is clear. Acquiescence as opposed to involvement? Exactly. The standard is if a public official acquiesces in the torture of an individual, that meets the standard for protection under the cat. So the BIA just simply applied the wrong standard. And under the correct standard, Mr. Forsyth was told by Detective Durant, I can't protect you. So the one person in Jamaica who was trying to protect him basically said, get out of the country. I can't save you from the people who are trying to torture and kill you. Thank you. Thank you, Your Honor. We reserve two minutes for our battle. Good morning, Your Honors, and may it please the Court. Attorney Sabatino F. Leo on behalf of the United States Attorney General. I think what's abundantly clear is this Court, as directed counsel to argue today, is whether or not there really has been affirmative abandonment by Petitioner in this particular case. And I think what specifically delineates this case from a number of other cases, or at least the case cited by Petitioner in this particular situation with regard to Hayward, is specifically here, not only was his stay of removal denied, so he understood at that particular time that the likelihood of his removal was imminent, but also that this Court, understanding the very nature of the denial of a stay of removal, ordered this Petitioner to continue to update this Court with his address and contact information in order to adequately and accurately pursue his particular claims. I would also add that in January 23rd of 2017, on the eve of his removal, Petitioner in this particular case filed a motion to expedite appeal in light of this particular pending removal. In response to that, this Court effectively denied that motion to expedite on the same day Petitioner was, in fact, removed to Jamaica for this particular situation. So I would also add with regard to the inability of Petitioner now having been removed to Jamaica of not being able to update the Court, as instructed by this Court, I actually have contacted, as indicated in my letter to this particular Court of last week, whether or not any further forwarding address was provided to ICE or any additional information. Yes, we have a Petitioner who was fully aware some six months prior, I believe it was August of 2016, in which the motion for a stay of removal was denied, understood the imminency of his removal, yet did not advise this Court, nor did he advise ICE of any forwarding address or where he would likely be staying, or I would also add that he was removed to Jamaica. For all intents and purposes, he has the ability to communicate via telephone, via internet, etc. This is a situation in which he was aptly able to communicate his whereabouts with this particular Court with regard to his prosecution of this case. And I would add, and there's a litany of cases primarily emanating from the District Court but also being ruled on by the Second Circuit in these particular situations, that litigants must comply with court orders. And I would invite this Court's attention to Menotti v. Lensick, 895 F. 2nd 103, which says all litigants, including pro ses, have an obligation to comply with court orders. There's also a litany of cases emanating, obviously, from many times, mostly from the District Court, that says even though we provide this solicitude, this holding of hands of pro se litigants, they are still bound to, not only court orders, but to actively participate in their litigation. And for this particular petitioner to effectively have been removed to his home of nativity and citizenship, he was not transported, I think as opposing counsel would like us to believe, to a nation that he is unaware of, unaware of the whereabouts, has no points of contact there, clearly does, it's a nation of nativity and citizenship, and for him not to have any communique with this particular Court going on ten months now, despite not only my investigation or my inquiry, but I'm assuming opposing counsel diligently attempted to contact petitioner, whether it be evidence in the record or otherwise, with regard to this particular alien. And this particular alien effectively has abandoned his claim before this Court, and I think this Court recognized that with regard to this Court's issuance of its order approximately ten days ago, whereas why should we consider this case where he has effectively abandoned? And this is a situation where I would ask that this Court need not go further, that this case, as this Court has recognized, effectively abandoned, and willfully, I would say, abandoned his particular petition for review before this Court. And there's a... He was removed. Yes. Removed. Are you calling that abandonment? Your Honor, he was... He was removed. I concur. Unwillingly. And you're saying he abandoned? I would concur. It doesn't seem like a fair characterization. I would say, Your Honor, he was notified... He was filed a state of removal, which was denied. At that particular time, he understood that removal was imminent. At that particular time, while remaining in detention, while he could have notified, whether or not family members or whatnot, or even this Court, if I am removed, this is where I will be, immediately on the heels, I should say on the eve of his removal, understanding that he is going to get removed, he files a motion to expedite his appeal. Does he not indicate in that motion to expedite appeal where he will be... Will the motions expedite? The pro se petitioner in January of 2017. Yes. Yes, Your Honor. In January of 2017. Did the government oppose it? The government did not oppose it, but it was three... Within 72 hours, this Court denied it. And I don't speak for the government as far as whether or not our intention was to oppose it. I can honestly say that within 72 hours, that motion order was denied by this Court. Denying motion on 126, motion to expedite filed on behalf of petitioner 123. So within 72 hours. So whether or not we were gathering our thoughts or whatnot at that particular time, I was not on the case. But I can speak that based upon the record and what is before this particular Court is that he was aware, understood that he was being removed, and despite that, effectively abandoned his . . . When you're saying that he was aware that he was going to be removed, the fact that he made a motion to expedite our proceedings suggested that he knew how to be in touch with the Court and to have this Court consider his claims and that we should take, this is your argument, we should take from his lack of communication since then that he's abandoned this petition. Your adversary says that we shouldn't take that because it's your burden to show that it's moot, that it's been abandoned, and it's not enough to take from the fact that he has not been in touch for 10 months, that he's abandoned his claims. Well, I think in this particular situation, in light of the Court's order, we are in a situation where what has petitioner done, and I think it's recognizable based upon the . . . in this particular case that he's done nothing for 10 months, despite efforts on the part that this Court directed government counsel to do, which I did, and despite efforts on the part of opposing counsel to do that. So you have a situation where 10 months have transpired since his last communique with this particular Court, and there has been nothing. It's an easy situation to contact this Court to let this Court know what your whereabouts are. He clearly was aware of the situation. He clearly understood, as Brother Counsel indicated. He did file a brief. He also filed a motion for an extension to file a reply brief. So we are dealing with an individual, and I understand the lay nature of pro se individuals, that understood the very nature of these proceedings, and he being able to do such once he's returned to Jamaica, again, his country of nativity and citizenship, not some third country that he's unaware of the customs, the language, et cetera, the going arounds of, et cetera. I would add that that is critical to his particular case with regard to his whereabouts now and where he's been, and I think this Court did an outstanding job of kind of identifying that for us and saying, well, really, Your Honor, Brother Counsel, where has this individual been? He has violated a court order that was issued in conjunction with the denial of the motion to stay. Now, if there are no further questions on the abandonment claim, if I may briefly speak with regard to the denial of withholding. And I think what is remarkably important here is that we need to really focus on, in order to have a clear probability of withholding, any fear of persecution, violence has to be on account of or based upon one of certain grounds, a protected ground. And one of these particular grounds are particular social groups. And as the Board of Immigration Appeals and as the immigration judge does in this particular situation, it relies on their seminal cases of matter of WGR and MEVG, which say there are essentially three elements with regard to a particular social group. Is there a common immutable characteristic? Is it defined with particularity? And is his particular social group distinct? I would present before this court that it's clear from the record evidence that he's not defined. Number one, he's waived any argument with regard to finding of a common immutable characteristic. That alone is fatal to his claim. He has to satisfy all three quote-unquote elements. And I would say that the specific nature of his claim, the particular social group of non-criminal informants in Jamaica, simply does not satisfy that heavy burden. I would also invite this court's attention to the respect that the standard of review here is substantial evidence. Does the record evidence compel a contrary conclusion? As I indicated, common immutable characteristic is waived. That alone effectively defeats his withholding claim. In any event, the reliance on Gashie is completely different for the simple fact that Gashie, you had an international armed conflict where you had a clearly identified Kosovo Liberation Army and the armed forces of Kosovo. You had public lists. You had situations where other witnesses were harassed, tear-gassed, fire-bombed, etc. So I would say it's clearly the facts of that particular case are clearly distinct. And just to add one moment, and I apologize, I'm over my time for one minute, and I apologize to this honorable court, is that with respect to Kat, I think a clear reading of the immigration judge's, reading the decisions together, the immigration judge's decision and the board's decision, it is clear that he did not satisfy the more likely than not standard for the Convention Against Torture. I'd ask that the petition for review be denied. I apologize for going over your time. Thank you, Your Honors. Thank you. Your apology is accepted. Mr. Seance, you have two minutes for rebuttal. Thank you, Your Honors. A few points to make. My friend says that critical to his case that Jamaica is where Mr. Forsythe is from. It's where he's native. And so my friend speculates that he must have somewhere to go. If you look at the evidence in this case, and I would refer the court to the record at pages 140, 169, 176, Mr. Forsythe testifies that he has nowhere to go. He doesn't know where he could go. And on top of that, everywhere he is, he was literally chased from corner to corner of the country the last time he was there, running for his life. So I think, again, I did not hear my friend dispute that the government here has the burden to establish mootness or abandonment. And I think it is really speculation that there has been a willful violation of this court's order or abandonment given all of the record evidence suggesting that Mr. Forsythe very well may not have a fixed address that he could have provided to this court. Second, my friend says that this court did an outstanding job of identifying this issue for us. I think that's a critical point. The government knew in January that Mr. Forsythe had been removed. This court didn't know. I did not know when I was appointed by this court. And at that point, it had been almost six months. And certainly the government could have informed this court, Your Honor, I think that this petition has been abandoned. We think that he chose not to go forward. And on top of that, there's been a violation of the court order. The government did not do that until, in my friend's words, this court identified the issue. And I think as long as we're in the realm of abandonment and not mootness, which I don't think my friend challenges, this court has to make a discretionary determination. And I think the fact that the government did not identify this issue for the court ought to weigh heavily in that balance. I would add one further factor in that regard. Again, if this court regards it as a discretionary issue of what to do about a potential violation of an order of the court, the gravamen of this case is did the BIA faithfully follow a decision of this court, the Gashi case. I won't go again into why I think the BIA got it wrong. But if the BIA is not faithfully applying the decisions of this court and there's no jurisdictional bar preventing this court from reaching the merits of the issue, I think that is just another reason why this court should not exercise its discretion, should not agree with the government's belated position, sort of speculative position, that the petition has been abandoned. Say we grant some relief to Mr. Forsyth. We don't know where he is. How is he informed? He hasn't given his new address, as you state. How do we inform him? Say we want another hearing for which he has to show up. Your Honor, I think there's a few issues here. I apologize. I'm over my time, but I'll answer Your Honor's question with permission. I think if you were to remand for another hearing, then I think the issue may very well then come to a head. I will certainly undertake to inform Petitioner's former counsel that a remand has been issued, and his counsel with more time may have more luck in tracking down Mr. Forsyth. But I think that issue won't have come to a head until there has been a remand and the question of his participation at that stage is presented. I also don't think a remand is necessary. I think the evidence, there are legal errors here. There is a legal error in terms of the application of the particular social group classification under Gashi. There is a legal error where the BIA thought there was a heightened burden to establish cat relief. I think once those errors are aside, I think, in my view, the court could simply vacate the removal order. And if that's the case, whether or not Mr. Forsyth finds out about it immediately, if he decides in 10, 15 years to apply for readmission, the fact of his removal will benefit him. He has a stake in that, and he will at that time, If there are no further questions, I would ask for the order to be vacated. Thank you.